IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Criminal No. _____ 3:09-CR-398 |
| | : | |
| | : | 18 U.S.C. § 2 |
| | : | 18 U.S.C. § 1951 |
| | : | 18 U.S.C. § 1512 |
| v. | : | 18 U.S.C. § 241 |
| | : | 18 U.S.C. § 242 |
| **MATTHEW NESTOR** | : | |
| **AND** | : | **FILED** |
| **JAMIE GENNARINI** | : | **SCRANTON** |
| | | DEC 10 2009 |
| | | PER _____ |
| | **INDICTMENT** | DEPUTY CLERK |

THE GRAND JURY CHARGES:

GENERAL ALLEGATIONS

1. At all times relevant to this indictment, the Shenandoah Police Department ("Police Department") was a law enforcement agency in Schuylkill County, Pennsylvania. Among other functions, the Police Department investigated crimes committed in Shenandoah, Pennsylvania.

2. At all times relevant to this indictment, employees of the Shenandoah Police Department were responsible for conducting themselves in compliance with federal, state and local laws, including the United States Constitution.

3. At all times relevant to this indictment, defendant MATTHEW NESTOR was employed by the Shenandoah Police Department as the Chief of Police.

4. At all times relevant to this indictment, defendant JAMIE GENNARINI was employed by the Shenandoah Police Department, working as a Captain.

THE GRAND JURY CHARGES THAT:

## COUNT 1

18 U.S.C. § 1951
[Conspiracy]

1. Paragraphs 1-3 of the General Allegations are incorporated by reference in this count.

2. From in or around 2004 and continuing until on or about September 17, 2007, in Shenandoah, Pennsylvania, and elsewhere within the Middle District of Pennsylvania, the defendant:

MATTHEW NESTOR

did conspire, combine, confederate and agree with other persons known and unknown to the Grand Jury, to knowingly obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, section 1951; that is, defendant conspired to obtain property not due Defendant or his office, from, and with the consent of, Person # 1, Person # 2, and Person # 3, individuals known to the grand jury, under color of official right.

Manner, Means, and Object of the Conspiracy

It was part of the manner, means, and object of the conspiracy that:

3. Defendant MATTHEW NESTOR, and others known to the Grand Jury, entered into a scheme within the Middle District of Pennsylvania to extort cash payments for personal profit from bookmakers operating in Shenandoah, Pennsylvania, who were engaged in illegal gambling.

The conspiracy was to be accomplished in substance as follows:

4. Defendant MATTHEW NESTOR and others, known to the grand jury, would use NESTOR'S status as a local law enforcement officer and the Chief of Police of Shenandoah,

Pennsylvania, to carry out the extortion scheme.

5. In or around 2004, Participant # 1, an individual known to the grand jury who was acting as a bagman on behalf of defendant MATTHEW NESTOR, approached the bookmakers at their establishments in Shenandoah, Pennsylvania, and threatened them that their gambling establishments would have to make regular cash payments to defendant NESTOR which would be collected by Participant #1, or defendant NESTOR would exercise his authority as Chief of Police and arrest the bookmakers and shut down their gambling operations.

6. Beginning in or around 2004 and continuing into 2007, Participant # 1 collected weekly cash payments from the illegal bookmakers. Defendant MATTHEW NESTOR arranged with his coconspirators that Participant # 1 would deliver the weekly cash payments to Participant # 2, an individual known to the grand jury who was an associate of defendant NESTOR and who acted as a middleman in the extortion scheme. Participant # 1 would subtract a small cut for himself each week before turning the money over to Participant # 2. Participant # 2 would receive the weekly payments from Participant # 1, and, after subtracting a small cut for himself, Participant # 2 would pass the largest share of the cash payments to defendant MATTHEW NESTOR.

7. During the length of the conspiracy, from 2004 through 2007, the Shenandoah Police Department, led by defendant MATTHEW NESTOR, took no law enforcement action against the local bookmakers, and the illegal gambling operations were permitted to operate openly from Shenandoah, Pennsylvania.

## Overt Acts

In furtherance of this conspiracy, and to accomplish its objectives, the conspirators committed the following overt acts, among others, in and around Shenandoah, Pennsylvania:

8. In or around 2004, defendant MATTHEW NESTOR met with Participant # 1 and

Participant # 2 at the garage belonging to Participant # 2 in Schuylkill County, Pennsylvania, to discuss defendant NESTOR's plan to extort the local bookmakers.

9. In or around 2004, at defendant MATTHEW NESTOR's direction, Participant # 1 met with Person # 1, who operated an illegal gambling establishment in Shenandoah, Pennsylvania, and threatened Person # 1 that his gambling establishment would have to make regular cash payments to defendant NESTOR which would be collected by Participant # 1, or defendant NESTOR would exercise his authority as Chief of Police to arrest Person # 1, and shut down his illegal gambling operation.

10. In or around 2004, at defendant MATTHEW NESTOR's direction, Participant # 1 met with Person # 2, who operated an illegal gambling establishment in Shenandoah, Pennsylvania, and threatened Person # 2 that his gambling establishment would have to make regular cash payments to defendant NESTOR which would be collected by Participant # 1, or defendant NESTOR would exercise his authority as Chief of Police to arrest Person # 2, and shut down his illegal gambling operation.

11. In or around 2004, at defendant MATTHEW NESTOR's direction, Participant # 1 met with Person # 3, who operated an illegal gambling establishment in Shenandoah, Pennsylvania, and threatened Person # 3 that his gambling establishment would have to make regular cash payments to defendant NESTOR which would be collected by Participant # 1, or defendant NESTOR would exercise his authority as Chief of Police to arrest Person # 3, and shut down his illegal gambling operation.

12. On or about July 28, 2006, Participant # 1, on behalf of defendant MATTHEW NESTOR, went to Person # 1's establishment and collected cash from the three illegal gambling operations.

13. On or about October 30, 2006, Participant # 1, on behalf of defendant MATTHEW NESTOR, went to Person # 1's establishment and collected cash from the three illegal gambling operations.

14. On or about November 3, 2006, Participant # 1, on behalf of MATTHEW NESTOR, went to Person # 1's establishment and collected cash from the three illegal gambling operations.

15. On or about January 11, 2007, Participant # 1, on behalf of MATTHEW NESTOR, went to Person # 1's establishment and collected cash from the three illegal gambling operations.

16. On or about January 18, 2007, Participant # 1, on behalf of MATTHEW NESTOR, went to Person # 1's establishment and collected cash from the three illegal gambling operations.

17. On or about January 25, 2007, Participant # 1, on behalf of MATTHEW NESTOR, went to Person # 1's establishment and collected cash from the three illegal gambling operations.

All in violation of Title 18, United States Code, Section 1951.

THE GRAND JURY FURTHER CHARGES THAT:

## COUNT 2

[18 U.S.C. § 1951]

1. Paragraphs 1-3 of the General Allegations are incorporated by reference in this count.

2. From in or around 2004 and continuing until on or about September 17, 2007, in Shenandoah, Pennsylvania, and elsewhere within the Middle District of Pennsylvania, the defendant:

MATTHEW NESTOR

along with other persons known to the Grand Jury, while aiding and abetting one another, did knowingly obstruct, delay, and affect, and did attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion,

as those terms are defined in Title 18, United States Code, section 1951; that is, defendant obtained property and attempted to obtain property not due to the defendant or his office, from, and with the consent of, Person # 1, an individual known to the grand jury, under color of official right.

All in violation of Title 18, United States Code, Sections 1951 and 2.

THE GRAND JURY FURTHER CHARGES THAT:

## COUNT 3

[18 U.S.C. § 1951]

1. Paragraphs 1-3 of the General Allegations are incorporated by reference in this count.

2. From in or around 2004 and continuing until on or about September 17, 2007, in Shenandoah, Pennsylvania, and elsewhere within the Middle District of Pennsylvania, the defendant:

MATTHEW NESTOR

along with other persons known to the Grand Jury, while aiding and abetting one another, did knowingly obstruct, delay, and affect, and did attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, section 1951; that is, defendant obtained property and attempted to obtain property not due to the defendant or his office, from, and with the consent of, Person # 2, an individual known to the grand jury, under color of official right.

All in violation of Title 18, United States Code, Sections 1951 and 2.

THE GRAND JURY FURTHER CHARGES THAT:

## COUNT 4

[18 U.S.C. § 1951]

1. Paragraphs 1-3 of the General Allegations are incorporated by reference in this count.

2. From in or around 2004 and continuing until on or about September 17, 2007, in Shenandoah, Pennsylvania, and elsewhere within the Middle District of Pennsylvania, the defendant:

MATTHEW NESTOR

along with other persons known to the Grand Jury, while aiding and abetting one another, did knowingly obstruct, delay, and affect, and did attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, section 1951; that is, defendant obtained property and attempted to obtain property not due to the defendant or his office, from, and with the consent of, Person # 3, an individual known to the grand jury, under color of official right.

All in violation of Title 18, United States Code, Sections 1951 and 2.

THE GRAND JURY FURTHER CHARGES THAT:

## COUNT 5

18 U.S.C. § 1512(b)(3)
[Obstruction of Justice - Corrupt Persuasion]

1. Paragraphs 1-3 of the General Allegations are incorporated by reference in this count.

2. On or about September 17, 2007, through on or about October 17, 2007, in the Middle

District of Pennsylvania and elsewhere, the defendant:

MATTHEW NESTOR

did knowingly attempt to corruptly persuade Participant # 2, an individual known to the grand jury, not to cooperate with or provide information about the extortion to federal agents with the intent to hinder, delay, and prevent the communication to a law enforcement officer of information relating to the commission and possible commission of a Federal offense, to wit: NESTOR offered money to Participant # 2 if Participant # 2 would refuse to cooperate or assist federal agents who were investigating defendant NESTOR's participation in the extortion scheme.

All in violation of Title 18, United States Code, Section 1512(b)(3).

THE GRAND JURY FURTHER CHARGES THAT:

## COUNT 6

18 U.S.C. § 1951
[Conspiracy]

1. Paragraphs 1-4 of the General Allegations are incorporated by reference in this count.

2. On or about May 17, 2007, in Shenandoah, Pennsylvania, and elsewhere within the Middle District of Pennsylvania, the defendants:

MATTHEW NESTOR and
JAMIE GENNARINI

did conspire, combine, confederate and agree to knowingly obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, section 1951; that is, defendants conspired to obtain property not due defendants or their office, from Person # 4 and Person # 5, individuals known to the grand jury, with the consent of Person # 4 and Person # 5, under color of

official right.

## Manner, Means, and Object of the Conspiracy

It was part of the manner, means, and object of the conspiracy that:

3. Defendants MATTHEW NESTOR and JAMIE GENNARINI entered into a scheme within the Middle District of Pennsylvania to extort cash payments for personal profit from Person # 4, a businessman, and his family.

4. Defendants MATTHEW NESTOR and JAMIE GENNARINI would use their status as law enforcement officers, and the incidents of their office, including driving a marked police vehicle, wearing police uniforms, displaying official badges and identification, and carrying firearms, to carry out the extortion scheme.

## Overt Acts

In furtherance of this conspiracy, and to accomplish its objectives, the conspirators committed the following overt acts, among others, in and around Shenandoah, Pennsylvania:

5. On or about May 17, 2007, defendants MATTHEW NESTOR and JAMIE GENNARINI, dressed in full police uniform, armed, and wearing police badges, traveled together in a police vehicle to Person # 4's place of business in Schuylkill County in the Middle District of Pennsylvania.

6. After arriving at Person # 4's place of business, on or about May 17, 2007, defendants MATTHEW NESTOR and JAMIE GENNARINI entered Person # 4's office and defendant GENNARINI announced, "This is the way we are going to do business in Shenandoah!"

7. On or about May 17, 2007, defendants MATTHEW NESTOR and JAMIE GENNARINI forcibly took Person # 4 into custody and drove him in their police vehicle to the Shenandoah Police Station while defendant JAMIE GENNARINI demanded money from Person

# 4.

8. After defendants MATTHEW NESTOR and JAMIE GENNARINI placed Person # 4 into a holding cell at the police station, on or about May 17, 2007, defendant NESTOR threatened that Person # 4 would be formally arrested unless Person # 5 produced $2,000 in cash to be turned over to defendants MATTHEW NESTOR and JAMIE GENNARINI.

9. On or about May 17, 2007, defendant MATTHEW NESTOR took the $2,000 cash from Person # 5 after Person # 5 returned to the police station, having withdrawn the money from Person # 5's savings account at defendant MATTHEW NESTOR'S direction

10. On or about May 17, 2007, defendants MATTHEW NESTOR and JAMIE GENNARINI wrote vague and misleading entries into the Shenandoah Police Department's logbook regarding the arrest and detention of Person # 4 for the purpose of concealing Person # 4's arrest and detention.

All in violation of Title 18, United States Code, Section 1951.

THE GRAND JURY FURTHER CHARGES THAT:

### COUNT 7

[18 U.S.C. § 1951]

1. Paragraphs 1-4 of the General Allegations are incorporated by reference in this count.

2. On or about May 17, 2007, in Shenandoah, Pennsylvania, and elsewhere within the Middle District of Pennsylvania, the defendants:

MATTHEW NESTOR and
JAMIE GENNARINI

while aiding and abetting one another, did knowingly obstruct, delay, and affect, and did attempt

to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, section 1951; that is, defendants obtained property and attempted to obtain property not due to the defendants or their office, from, and with the consent of, Person # 4, under color of official right.

All in violation of Title 18, United States Code, Sections 1951 and 2.

THE GRAND JURY FURTHER CHARGES THAT:

### COUNT 8

[18 U.S.C. § 1951]

1. Paragraphs 1-4 of the General Allegations are incorporated by reference in this count.

2. On or about May 17, 2007, in Shenandoah, Pennsylvania, and elsewhere within the Middle District of Pennsylvania, the defendants:

> MATTHEW NESTOR, and
> JAMIE GENNARINI,

while aiding and abetting one another, did knowingly obstruct, delay, and affect, and did attempt to obstruct, delay, and affect, in any way and degree commerce and the movement of articles and commodities in commerce by extortion, as those terms are defined in Title 18, United States Code, section 1951; that is, defendants obtained property and attempted to obtain property not due Defendants or their office, from, and with the consent of, Person # 5, under color of official right.

All in violation of Title 18, United States Code, Sections 1951 and 2.

THE GRAND JURY FURTHER CHARGES THAT:

## COUNT 9

18 U.S.C. § 241
[Conspiracy to Violate Civil Rights]

1. Paragraphs 1-4 of the General Allegations are incorporated by reference in this count.

2. On or about May 17, 2007, in Shenandoah, Pennsylvania, and elsewhere within the Middle District of Pennsylvania, the Defendants:

MATTHEW NESTOR and
JAMIE GENNARINI

while acting under color of the laws of the State of Pennsylvania, did conspire, combine, confederate and agree, to wrongfully seize the property of Person # 5, thereby willfully depriving her of rights and privileges secured and protected by the Constitution and laws of the United States, to wit: the right to be free from an unreasonable seizure by one acting under color of law.

### Manner, Means, and Object of the Conspiracy

It was part of the manner, means, and object of the conspiracy that:

3. Defendants, MATTHEW NESTOR and JAMIE GENNARINI, entered into a scheme within the Middle District of Pennsylvania to unlawfully seize $2,000 in cash from Person # 5 for the personal profit of the defendants.

4. Defendants MATTHEW NESTOR and JAMIE GENNARINI would use their status as law enforcement officers, and the incidents of their office, including driving a marked police vehicle, wearing police uniforms, displaying official badges and identification, and carrying firearms, to carry out the unlawful seizure of property from Person # 5.

### Overt Acts

In furtherance of this conspiracy, and to accomplish its objectives, the conspirators

committed the following overt acts, among others, in and around Shenandoah, Pennsylvania:

5. After placing Person # 4 into a holding cell at the police station on or about May 17, 2007, defendant MATTHEW NESTOR threatened that Person # 4 would be formally arrested unless Person # 5 produced $2,000 in cash to be turned over to defendants MATTHEW NESTOR and JAMIE GENNARINI.

6. On or about May 17, 2007, after Person # 5 advised defendant MATTHEW NESTOR that Person # 5 would have to go to the bank to obtain the cash, defendant NESTOR directed Person # 5 to do so, and as Person # 5 was leaving the police station, defendant NESTOR threatened Person # 5 that he would be preparing the paperwork for the arrest of Person # 4 while Person # 5 was gone.

7. On or about May 17, 2007, while Person # 5 was away from the police station and retrieving the cash for defendants MATTHEW NESTOR and JAMIE GENNARINI, defendant NESTOR called Person # 5 on Person # 5's cellular telephone and demanded to know what was taking "so long."

8. On or about May 17, 2007, defendant MATTHEW NESTOR took the $2,000 cash from Person # 5 after Person # 5 returned to the police station thereby committing an unreasonable seizure under color of law.

9. On or about May 17, 2007, defendants MATTHEW NESTOR and JAMIE GENNARINI wrote vague and misleading entries into the Shenandoah Police Department's logbook regarding the arrest and detention of Person # 4 for the purpose of concealing Person # 4's arrest and detention.

All in violation of Title 18, United States Code, Section 241.

THE GRAND JURY FURTHER CHARGES:

### COUNT 10

18 U.S.C. § 242
[Civil Rights]

1. Paragraphs 1-4 of the General Allegations are incorporated by reference in this count.

2. On or about May 17, 2007, in Shenandoah, Pennsylvania, and elsewhere within the Middle District of Pennsylvania, the Defendants:

MATTHEW NESTOR and
JAMIE GENNARINI

aiding and abetting each other, while acting under color of the laws of the State of Pennsylvania, did willfully deprive Person # 5 of rights and privileges secured and protected by the Constitution and laws of the United States, to wit: the right to be free from an unreasonable seizure by one acting under color of law.

All in violation of Title 18, United States Code, Sections 242 and 2.

A TRUE BILL.

Date: 12/10/09

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

Eric L. Gibson
Trial Attorney
Civil Rights Division
Criminal Section